IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

VERNA BEATRICE HARTFIELD,

    Plaintiff

v.

CAROLYN W. COLVIN,

    Acting Commissioner,
    Social Security
    Administration,
    Defendant.

Civil No. 2:16-CV-431

## ORDER

This matter comes before the Court on Verna Beatrice Hartfield's ("Plaintiff") Objections to Magistrate Judge Lawrence R. Leonard's Report and Recommendation ("R&R"). For the reasons herein, the Court: (1) **ACCEPTS** the R&R, ECF No. 12; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF Nos. 7, 8; and (4) **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 10.

## Contents

I. PROCEDURAL BACKGROUND ................................................................................. 2
II. FACTUAL BACKGROUND ........................................................................................ 3
   A. PLAINTIFF'S BACKGROUND ................................................................................ 3
   B. MEDICAL HISTORY ............................................................................................. 3
   C. ALJ HEARING - AUGUST 13, 2014 ...................................................................... 8
   D. ALJ'S FINDINGS OF FACTS AND CONCLUSIONS OF LAW ................................... 9
III. STANDARD OF REVIEW ....................................................................................... 10
IV. ANALYSIS ............................................................................................................ 12
   A. OBJECTION ONE: THE ALJ FAILED TO PROPERLY WEIGH THE MEDICAL OPINION EVIDENCE AND FAILED TO PROPERLY DETERMINE

  Ms. Hartfield's Residual Functional Capacity ................................................ 12
 B. Objection Two: The ALJ Failed to Properly Evaluate
  Plaintiff's Credibility. ........................................................................................ 13
V. CONCLUSION ............................................................................................................... 14

## I. PROCEDURAL BACKGROUND

Plaintiff applied for Disability Insurance Benefits ("DIB") on August 2, 2012, alleging disability as of December 1, 2011, caused by degenerative disk disease. R. 36, 53.[1] The Commissioner denied Plaintiff's application at the initial level and the reconsideration level of administrative review. R. 96, 108. The Plaintiff then requested a hearing by an Administrative Law Judge (ALJ), which occurred on August 13, 2014. R. 50. That day, Plaintiff, who appeared with counsel, and an impartial vocational expert testified before the ALJ. R. 50-76.

On November 18, 2014, the ALJ denied Plaintiff's application. R. 33. Plaintiff timely requested reconsideration, but the Appeals Council denied Plaintiff's request because, it "found no reason under [their] rules to review the Administrative Law Judge's decision." R. 1-6. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481 (2016).

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely filed the instant action for judicial review of Defendant's final decision. ECF No. 1. Plaintiff filed her Motion for Summary Judgment and Motion for Remand on October 19, 2016. ECF Nos. 7, 8. Defendant filed her Motion for Summary Judgment November 18, 2016. ECF No. 10. The matter was then referred to United States Magistrate Judge Lawrence R. Leonard pursuant to: (1) 28 U.S.C. § 636(b)(1)(B) and (C); (2) Rule 72(b) of the Federal Rules of Civil Procedure; (3) Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, and (4) the April 2, 2002, Standing

---

1.  Page citations are to the Certified Administrative Record filed under seal on August 19, 2015.

2

Order on Assignment of Certain Matters to United States Magistrate Judges. Judge Leonard issued his R&R with respect to the parties' opposing motions on May 16, 2017. ECF No. 12. The R&R recommends that this Court DENY Plaintiff's Motion for Summary Judgment, AFFIRM the final decision of Carolyn Colvin, the Acting Commissioner of the Social Security Administration, and GRANT Defendant's Motion for Summary Judgment. Plaintiff filed her objections to the R&R May 26, 2017. ECF No. 13. Defendant responded June 8, 2017. ECF No. 14.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Background

Plaintiff was born in 1958 and was 52 years old on her alleged disability onset date. R. 53. She has a high school education and past relevant work experience as a fast food crew person, a thrift store cashier, a fast food assistant manager, and a department store assistant manager. R. 53, 69-71. Plaintiff's most recent occupation was at the thrift store, where she worked from approximately January 2009 to April 2011. R. 182-86.

### B. Medical History

On January 15, 2009, about two years before her alleged disability date, Plaintiff visited Sentara Bayside ER complaining of back pain that radiated down her left leg after she "mov[ed] the wrong way." R. 397. She reported pain when she moved her back and when she raised her left leg. R. 399. She was diagnosed with back strain and lumbar discogenic pain syndrome. Id. She received injections for the pain as well as prescription pain killers and was discharged with instructions to follow up with her primary care physician. R. 400-01.

On February 17, 2009, Plaintiff returned to Sentara Bayside ER for back pain, this time radiating down her right leg. R. 426-27. She reported pain when she lifted her right leg. R. 429. She was prescribed pain killers and an anti-inflammatory steroid and was discharged with

instructions to follow up with an orthopedist. R. 32.

On October 10, 2009, Plaintiff returned to Sentara Bayside ER because she said she began experiencing lower back pain after lifting boxes at work. R. 471-72. She reported pain across her lower back that radiated down her left leg. R. 472. In addition to pain, she also exhibited tenderness and spasms in the lumbar back. R. 474. She was diagnosed with lumbar radiculopathy, prescribed pain medication and a muscle relaxant, and was instructed to follow up with Atlantic Orthopedic Specialists. R. 474, 477, 483.

On October 22, 2009, Plaintiff visited Atlantic Orthopedic Specialists. R. 315. She exhibited "tenderness in the left sided paraspinal muscles at the thoracolumbar junction," but her doctor observed no other abnormalities in her exam or x-ray. Id. The doctors recommended a steroid taper, physical therapy, and to follow up in four weeks. Id.

On November 16, 2009, Plaintiff returned to Sentara Bayside ER for back pain that had reportedly persisted for one month. R. 486-87. Her examination revealed tenderness, a minimal spasm, and possible costovertebral angle tenderness. Id. She was diagnosed with "Chronic mid back pain, flank pain. Acute on chronic pain or new pain related to UTI, renal colic." Id. She received morphine and Zofran for pain relief and was discharged with instructions to call her primary physician and to return to the ER if needed. R. 490, 491.

On June 29 and 30, 2010, seven months after her last appointment, Plaintiff visited Sentara Bayside ER after an incident at work. R. 528, 543. On June 29, she reported pain in her back and down her right leg. R. 528. Her medical records report "a decreased range of motion, tenderness . . . and pain." R. 532. She received an injection to treat pain and inflammation, and was prescribed drugs for both upon her release. 530, 532-33. The next day, June 30, Plaintiff returned to the ER for back pain via EMS. R. 544-45. She reported similar symptoms, plus the

4

inability to walk. R. 544. She received similar treatment. R. 549-50.

On July 9, 2010, Plaintiff followed up with Atlantic Orthopedic Specialists. R. 314. Her x-rays showed disc space narrowing at L5-S1 and suggestion of spina bifida oculta. Id. The orthopedist recommended an MRI. Id.

On April 12, 2011, Plaintiff returned to Sentara Bayside ER. R. 588. She reported back pain radiating down her left leg that began at work. Id. Her examination revealed tenderness over the left buttock, but a normal range of motion. R. 590.

On April 14, 2011, Plaintiff visited Patient First—Newtown. R. 288. She exhibited "[s]traight leg raise significant for increased nonradiating low back pain," but no tenderness. Id.

On May 5, 2011, Plaintiff returned to Atlantic Orthopedic Specialists. R. 313. She did not receive the recommended MRI because she said she is "severely claustrophobic." Id. Her doctor recommended steroids and physical therapy, and "placed her on light duty with essentially no repetitive bending or twisting and no lifting over five to 10 pounds." Id.

On June 9, 2011, Plaintiff began treatment at Haygood Physical Therapy. R. 325. Her physical therapist reported continued pain, but by July 8 Plaintiff reported she felt like she was "getting better each day." Id. She reported her back and left hip were sore after treatment, but she felt less pain, her low back was tight on the left side, and she also reported her boss wanted her to have a back brace. Id.

On August 1, 2011, Plaintiff returned to Sentara Bayside ER. R. 600. She again reported lower back pain, said she'd had pain since 2009, and said she wore a back brace. R. 600-01. Her doctor observed normal range of motion, bilateral lumbar paravertebral muscle tenderness, and bilateral sacroiliac area tenderness. Id. She was prescribed pain medication and a muscle relaxant. Id.

On January 26, 2012, Plaintiff visited Maria Salumbides, M.D., for back pain, nausea, and vomiting. R. 729-30. Dr. Salumbides noted plaintiff was experiencing back pain, slight weakness, and headaches. Id. She did not prescribe any medication. Id.

On March 30, 2012, Plaintiff again visited Dr. Salumbides for mild lower back tenderness and vomiting. R. 694-95. This time, she prescribed medication for back pain and vomiting. R. 695. Upon examination, Dr. Salumbides again noted back pain. Id. Plaintiff's straight leg test was negative for underlying herniated disk and she displayed normal gait, coordination, and muscle tone. R. 696.

On April 3, 2012, Plaintiff sought treatment from Michael G. Charles, M.D., for nausea and dyslipidemia. R. 697. Dr. Charles examined her neurological and musculoskeletal systems and noted that she was positive for back pain. R. 698. Dr. Charles diagnosed Plaintiff with degenerative disc disease ("DDD") in her lumbar region; elevated blood sugar; high cholesterol; degeneration of lumbar or lumbosacral intervertebral disc; other abnormal glucose; and pure hypercholesterolemia. R. 712.

On July 8, 2012, Plaintiff visited the Chesapeake General Hospital ER for back pain she experienced after moving from Virginia Beach to Chesapeake, Virginia. R. 679. Plaintiff's neurological examination was unremarkable and her musculoskeletal examination revealed "diffuse tenderness over the lumbosacral regions, mainly on the right side." R. 680. Plaintiff was prescribed pain medication, a muscle relaxant, and was instructed to follow up with her primary care physician. Id.

On October 4, 2012, Plaintiff visited the Chesapeake General Hospital ER for back pain. R. 744. Her neurological examination was unremarkable and her musculoskeletal examination showed normal stance and gait, a limited range in back motion, and mild tenderness over the

lumbar spine. R. 745. She was prescribed pain medication and instructed to follow up with an orthopedic doctor for pain management. Id.

On November 7, 2012, Plaintiff followed up with Dr. Charles. R. 791. Dr. Charles assessed her DDD, noted there were no significant changes in her condition, and noted that Plaintiff's neurological and musculoskeletal exams were unremarkable. Id. During the visit, Dr. Charles filled out a disability form for Plaintiff in which he evaluated how her medical condition would affect her ability to work during an eight-hour day. R. 754-61. He determined Plaintiff could sit for one hour then stand for one hour; she needed to get up every ten minutes when sitting; she could move for ten minutes before sitting again; and she could occasionally lift up to ten pounds. R. 756-59.

On February 11, 2013, Plaintiff again visited Dr. Charles. R. 780-81. Her neurological and musculoskeletal exams were unremarkable other than lower back pain. R. 781. Dr. Charles noted Plaintiff was experiencing pain after sitting for thirty minutes and prescribed her pain medication. Id.

Beginning in March 2013, Plaintiff participated in physical therapy at Southeastern Physical Therapy. R. 820-23. In the program, she "made significant improvements in mobility, endurance and strength." R. 820. She also made "steady progress with aquatic therapy" and showed slight improvements in her gait pattern. R. 821. Southeastern discharged Plaintiff from physical therapy sessions at Plaintiff's request. R. 820.

On April 2 and 8, 2013, Plaintiff saw Mabel Humphreys, N.P., for back pain. R. 763, 772. On April 2, Plaintiff reported "her back continue[d] to ache." R. 772. Nurse Humphreys examined Plaintiff's musculoskeletal and neurological systems, noted Plaintiff was positive for myalgias, and noted Plaintiff's gait was normal. R. 773. On April 8, Plaintiff told Nurse

7

Humphreys she was "feeling better" and her "pain [had] resolved in her back since previous visit." R. 764. Plaintiff's musculoskeletal and neurological examinations were unremarkable, showed a normal gait, and showed a normal range of motion. R. 764-65.

On March 31, 2014, Dr. Charles completed a second disability form. R. 798. In it, he opined that Plaintiff could sit for zero to one hour; could stand or walk for zero to one hour in an eight-hour workday; could lift or carry five pounds occasionally; and had moderate limitations regarding using her right hand to perform fine manipulations and to grasp, turn, or twist objects. R. 798-805.

On August 6, 2014 and August 17, 2014, Plaintiff visited Dr. Charles and Sentara Virginia Beach General Hospital, respectively, regarding her back pain and regarding other conditions. R. 848, 852.

### C. ALJ Hearing - August 13, 2014

At the ALJ hearing, Plaintiff testified that she injured her back in May 2011 when, while working as a cashier, she bent over to lift an item and turned around to place it on a table. R 54. She further testified that medication and physical therapy had not relieved her pain. R. 60, 63. Dr. Charles prescribed her medication, did not recommend surgery, and said "nothing could be done" about her condition. R. 64. Defendant stopped working in December 2011 because, at that time, she believed she could perform only light duty work and her employer did not have any such work for her to do. R. 56-57.

Plaintiff testified that she used a cane for support when walking outside of her home, but it was not prescribed for her and she does not the use it in her home. R. 64. Regarding household chores, she testified that her husband performed most of the house work and driving, but she could "drive as needed," cook using a NuWave, wash clothes, load the dishwasher, and shop for food. R. 61-62. She testified that her husband helped her put on her shoes and clothes and helped

8

her get in and out of the shower. R. 62. Plaintiff testified that she could lift only five pounds and sit up for fifteen minutes before she needed to lie down. R. 55-56.

The vocational expert testified that a person of Plaintiff's age, education, and experience would possess "management skills, which would include supervisory, skills of employees, scheduling, some inventory skills, communication skills, report writing and record keeping, some cashiering, money handling skills, and some problem resolution skills." R. 72-73. He testified that Plaintiff, or a hypothetical individual, with a residual functional capacity allowing for light work with occasional stooping or squatting and no crawling could work in occupations including office helper, information clerk, and laundry folder. Id.

The vocational expert testified that it would eliminate all jobs if a person needed to take alternate between working for 10 minutes and taking 10 minute breaks, needed to lay down on the job, or needed to be absent more than twice per month. R. 75. He testified that, if a person needed to alternate sitting and standing every 10 minutes, it would eliminate the laundry folder job and reduce the office helper and information clerk jobs available. Id. Finally, the vocational expert testified if a person needed a cane or could lift only up to 10 pounds, it would eliminate the light duty jobs but not affect sedentary jobs other than cashier. Id.

### D. ALJ's Findings of Facts and Conclusions of Law

After outlining the five-step sequential evaluation process applied to determine whether a person is disabled, R. 36-38; 20 C.F.R. §§ 404.1520, 416.920, the ALJ made the following findings of fact and/or conclusions of law at each step: First, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2011. Id. Second, Plaintiff had a severe medically determinable impairment that significantly limited her ability to perform basic work activities, Degenerative Disc Disease. R. 37-38. Third, Plaintiff did not have an impairment or combination of impairments of a severity that met or medically equaled the

criteria of a listed impairment that would make her disabled. R 39. Fourth, Plaintiff was capable of performing past relevant work as a Fast Food Crew Person and Thrift Store Cashier.[2] And Fifth, Plaintiff could perform other work that exists in significant numbers in the national economy, given her residual functional capacity, age, education, and work experience. R. 43. As a result, the ALJ determined a finding of "not disabled" was appropriate. Id.

### III. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. The Court may reject perfunctory or rehashed objections to R&R's that amount to "a second opportunity to present the arguments already considered by the Magistrate-Judge." Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); see Riddick v. Colvin, 2013 WL 1192984 *1 n.1 (E.D. Va., Mar. 21, 2013).

"Determination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (internal citation omitted)

---

2. Before reaching the fourth step, the ALJ determined Plaintiff had the residual functional capacity to perform a range of light work including occasional stooping or squatting, but excluding crawling, climbing ladders, and performing work at unprotected heights or around dangerous machinery. R. 40-42.

10

(internal quotation omitted). If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. Id. (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that she has "a severe impairment . . . which significantly limits . . . [her] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to last—for at least twelve months, then the claimant is disabled. Id. § 404.1520(d); see 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." Id. § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if she can make an adjustment to other work. If the claimant cannot make such an adjustment, then she is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five-step inquiry is limited to determining whether: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 65. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." Coffman v. Bowen, 829 F.2d 514,

517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 650 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In performing its review, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653).

## IV. ANALYSIS

Plaintiff objects to the R&R on two grounds. First, the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine her residual functional capacity. Second, the ALJ failed to properly evaluate Plaintiff's credibility.

### A. OBJECTION ONE: THE ALJ FAILED TO PROPERLY WEIGH THE MEDICAL OPINION EVIDENCE AND FAILED TO PROPERLY DETERMINE MS. HARTFIELD'S RESIDUAL FUNCTIONAL CAPACITY

Plaintiff objects to the R&R for recommending that the Court find the ALJ did not err by giving little weight to the opinions of the treating physician, Dr. Charles, and by finding Dr. Charles' opinion inconsistent with other clinical examinations. Obj. at 2, ECF No. 13.

Specifically, Plaintiff argues Dr. Charles stated his opinions were based on clinical examinations, and the opinions are consistent with examinations in the treatment records. Id. at 2. Plaintiff argues that the ALJ failed to cite any medical authority to support his conclusion that certain findings could not cause the physical limitations described by Dr. Charles. Id. at 3 (citing Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984)). Finally, Plaintiff argues the ALJ erred by over-emphasizing the significance of certain records showing Plaintiff improved with treatment in both rejecting Dr. Charles' opinions and determining residual functional capacity. Id.

Plaintiff presented this argument before Magistrate Judge Leonard in Plaintiff's Motion for Summary Judgment. See Mem. Supp. Pl.'s Mot. Summ. J. at 9-14, ECF No. 9. Indeed, much of Plaintiff's language in her Objection is identical to the language in the original Motion for Summary Judgment. The Magistrate Judge reviewed this contention and rejected it. R&R at 14-19, ECF No. 12. Plaintiff now seeks to rehash her R&R arguments through perfunctory objections. The Court may reject such rehashed arguments. *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); *see Riddick v. Colvin*, 2013 WL 1192984 at *1 n.1 (E.D. Va., Mar. 21, 2013). Nevertheless, the Court reviewed this objection de novo and adopts and approves the Magistrate Judge's findings and recommendation.

### B. OBJECTION TWO: THE ALJ FAILED TO PROPERLY EVALUATE PLAINTIFF'S CREDIBILITY.

Plaintiff next objects to the R&R for recommending this Court rule the ALJ did not err by finding Plaintiff's statements not credible. Plaintiff makes four arguments supporting this objection. First, the Magistrate Judge and ALJ were wrong to find that the clinical records documenting Plaintiff's improvement with treatment undermined her credibility. Obj. at 5, ECF No. 13. Second, contrary to the ALJ's finding, there is evidence Plaintiff needs a cane to ambulate. Id. at 6. Third, Plaintiff's activities of daily living do not conflict with any of her

claims. Id. Finally, the ALJ could not rely on the lack of surgery or other specialized treatment to find Plaintiff's disability claims not credible. Id. at 6-7.

As with Plaintiff's first objection, this argument was presented before the Magistrate Judge in Plaintiff's Motion for Summary Judgment. See Mem. Supp. Pl.'s Mot. Summ. J. at 15-18, ECF No. 9. Magistrate Judge Leonard reviewed this contention and rejected it. R&R at 19-23, ECF No. 12. Plaintiff now makes an objection in order to rehash her arguments. The Court may reject this rehashing. Gonzalez-Ramos, 360 F. Supp. 2d at 376; see Riddick, 2013 WL 1192984 at *1 n.1. Despite this discretion, the Court reviewed this objection *de novo* and adopts and approves the Magistrate Judge's findings and recommendation.

## V. CONCLUSION

Having reviewed Plaintiff's objection *de novo*, the Court: (1) **ACCEPTS** the R&R, ECF No. 12; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration; (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF Nos. 7, 8; and (4) **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 10.

The Clerk is **DIRECTED** to enter judgment in favor of defendant and to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
September 25, 2017